UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

NATHAN WOHLRABE,

    Plaintiff,

v.                                                                                  Case No. 24-cv-1321-bhl

CHARLES BROWN and
MARTIN RUNGE,

    Defendants.

## SCREENING ORDER

    Plaintiff Nathan Wohlrabe, who is currently confined at Mendota Mental Health Institute and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. On November 4, 2024, the Court screened the complaint and, after identifying various deficiencies, gave Wohlrabe the opportunity to file an amended complaint, which he did on November 18, 2024. The Court will screen the amended complaint as required by 28 U.S.C. §1915A.

### SCREENING OF THE AMENDED COMPLAINT

    As previously explained, the Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To

state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

## ALLEGATIONS OF THE AMENDED COMPLAINT

According to Wohlrabe, on June 10, 2022, his wife took him to the Veterans Affairs Medical Center because he was feeling dizzy, short of breath, and fatigued. Wohlrabe explains that he had been in a car accident four months earlier and had developed serious conditions as a result of his injuries and the physical stress of having recently returned to work. Wohlrabe asserts that, after not being properly treated and feeling desperate, he left his bed and ran into the hospital lobby where Defendant Security Officer Charles Brown was located. Wohlrabe states that he was out of breath, confused, and in a state of near delirium. He allegedly ran back towards the nurses' station, and Brown followed him. Wohlrabe asserts that he yelled for medication. Upon noticing that Brown was following him, Wohlrabe ran into the nurses' station allegedly to avoid conflict. He asserts that he was then surrounded, at which time he yelled, "Are we going to get violent?" Wohlrabe explains that he continued to cry out for help with no response from Brown or medical staff. He asserts that Brown and others, who are supervised by Deputy Chief Martin Runge, not only failed to render aid but also failed to find a peaceful resolution. Dkt. No. 6.

The subsequent events are not entirely clear, but at some point Brown allegedly arrested Wohlrabe, who was then treated with various medications overnight, and released the next day into the custody of Milwaukee police, who transported him to the Milwaukee County Jail.

2

Wohlrabe asserts that he was confined in a cell with a broken toilet for 21 days, but he does not sue anyone in connection with those allegations. Dkt. No. 6.

THE COURT'S ANALYSIS

Wohlrabe is seeking damages based on allegations that Brown arrested him without cause and refused to render aid to him while he was clearly experiencing a medical crisis. To prevail on a Fourth Amendment claim for false arrest, Wohlrabe must establish that he was arrested without probable cause. *Gaddis v. DeMattei*, 30 F.4th 625, 630 (7th Cir. 2022). "Probable cause for an arrest provides an absolute defense to a false arrest claim." *Id*. (citing *Farnik v. City of Chicago*, 1 F.4th 535, 545 (7th Cir. 2021)). And "[p]robable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott v. Sangamon Cnty.*, 705 F.3d 706, 714 (7th Cir. 2013) (citations omitted). Courts must also assess whether an officer's actions are "objectively reasonable in light of the facts and circumstances confronting [the officer]." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Further development of the record may reveal that Brown had probable cause to arrest Wohlrabe and that his actions in response to Brown's medical crisis were reasonable, but at this early stage, Wohlrabe's allegations are sufficient to state a Fourth Amendment claim against Brown.

Wohlrabe does not, however, state a claim against Brown's supervisor, Runge. The doctrine of respondeat superior cannot be used to hold a supervisor liable for the misconduct of a subordinate. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). The only time a supervisor will be held liable for a subordinate's misconduct is if the supervisor directs or consents to the misconduct. For example, the supervisor "must know about the conduct and facilitate it, approve

Case 2:24-cv-01321-BHL    Filed 11/22/24    Page 3 of 4    Document 7

it, condone it, or turn a blind eye" for fear of what they might see. *Id*. (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir.1988)). "[S]upervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." *Jones*, 856 F.2d at 992. Wohlrabe explains that he is suing Runge only because he supervises the security officers at the hospital. This, on its own, is not enough for him to state a claim against Runge under §1983.

**IT IS THEREFORE ORDERED** that Wohlrabe fails to state a claim against Runge, so the clerk's office is directed to terminate him from this action.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the amended complaint and this order upon Charles Brown pursuant to Federal Rule of Civil Procedure 4. Brown is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2)–(3). Although Congress requires the Court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The Court is not involved in the collection of the fee.

**IT IS FURTHER ORDERED** that Brown shall file a responsive pleading to the amended complaint.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

Dated at Milwaukee, Wisconsin on November 22, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge